Ebldjohp

Plea

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                           14 Cr. 0404(JMF)

5    BRENDAN JOHNSTON,

6              Defendant.

7    ------------------------------x

8
                                           November 21, 2014
9                                          10:08 a.m.

10
     Before:
11
                        HON. JESSE M. FURMAN,
12
                                           District Judge
13

14                        APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  SARAH Y. LAI
17        Assistant United States Attorney

18   MICHAEL ZWEIBACK
          Attorney for Defendant
19

20        – also present –

21   SA Patrick Hoffman, FBI

22

23

24

25

Ebldjohp
                                    Plea

1           THE CLERK:  United States v. Brendan Johnston, 14 Cr.

2    404.  Counsel, please state your names for the record.

3           MS. LAI:  Sara Lai for the government.  Good morning,

4    your Honor.  With me at counsel table is Special Agent Patrick

5    Hoffman.

6           THE COURT:  Good morning to both of you.

7           MR. ZWEIBACK:  Good morning, your Honor.  Mike

8    Zweiback on behalf of the defendant, Brendan Johnson, who is on

9    bond and presently before the Court.

10          THE COURT:  Good morning to both of you.

11          You may be seated.

12          I have been advised, Mr. Johnston, that you wish to

13   change your plea and enter a plea of guilty to Count One of the

14   Information, 14 Crim. 404; is that correct?

15          THE DEFENDANT:  That is correct.

16          THE COURT:  All right.  Before I accept your guilty

17   plea, I need to ask you certain questions to establish to my

18   satisfaction that you are pleading guilty because you are in

19   fact guilty and not for some other reason, to ensure that you

20   understand the rights that you would be giving up by pleading

21   guilty, and to ensure that you understand the potential

22   consequences of a guilty plea.

23          It is essential that you understand each of my

24   questions before you answer them.  So if you don't, I want you

25   to let me know and either Mr. Zweiback or I will clarify it for

Ebldjohp

Plea

1    you.  And if at any point you would like to speak with

2    Mr. Szeiback, just let me know that and I'm happy to give you

3    however much time you need to speak with him.

4              Understood?

5              THE DEFENDANT:  Understood.

6              THE COURT:  All right.  Why don't you just move the

7    microphone a little closer to you so that you are speaking

8    directly into it.

9              Before we proceed any further, I will ask my deputy,

10   Ms. Barnes, to administer the oath to Mr. Johnston.

11             THE CLERK:  Please rise and raise your right hand.

12             (The defendant was sworn)

13             THE COURT:  You may be seated.

14             You are now under oath, Mr. Johnston, which means that

15   if you answer any of my questions falsely, you may be subject

16   to prosecution for the separate crime of perjury.  Do you

17   understand that?

18             THE DEFENDANT:  I understand that.

19             THE COURT:  What is your full name?

20             THE DEFENDANT:  Brendan McKenzie Johnston.

21             THE COURT:  How old are you?

22             THE DEFENDANT:  I'm 24.

23             THE COURT:  How far did you go in school?

24             THE DEFENDANT:  I'm currently enrolled in college.

25             THE COURT:  And have you ever been treated or

4

Ebldjohp

Plea

1    hospitalized for any mental illness?

2            THE DEFENDANT:  I'm currently being treated for

3    depression.  I don't know if that qualifies for that.

4            THE COURT:  Better to tell me than not.  Is there

5    anything about either your depression or your treatment that

6    would interfere with your ability to understand what is going

7    on here today?

8            THE DEFENDANT:  No, it would not.

9            THE COURT:  Have you ever been treated or hospitalized

10   for any type of addiction, including drug or alcohol addiction?

11           THE DEFENDANT:  No, I have not.

12           THE COURT:  In the last 48 hours, have you taken any

13   drugs, medicine or pills or drunk any alcohol?

14           THE DEFENDANT:  I have taken my medication that I take

15   daily.

16           THE COURT:  What medication is that?

17           THE DEFENDANT:  It is a Paxil, 40 milligrams.

18           THE COURT:  And is there anything about that

19   medication that will interfere with your ability to understand

20   what's happening here today?

21           THE DEFENDANT:  No.

22           THE COURT:  All right.  Is your mind clear today?

23           THE DEFENDANT:  Yes?

24           THE COURT:  Do you understand what's happening here

25   today?

Ebldjohp
                              Plea

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Counsel, have you discussed this matter

3    with Mr. Johnston?

4              MR. ZWEIBACK:  I have, your Honor.

5              THE COURT:  And does he understand the rights that he

6    would be giving up by entering a guilty plea?

7              MR. ZWEIBACK:  He does, your Honor.

8              THE COURT:  And in your judgment is he capable of

9    understanding the nature of these proceedings?

10             MR. ZWEIBACK:  Yes, your Honor.

11             THE COURT:  Does either counsel have any doubt as to

12   the defendant's competence to plead guilty at this time?

13             MS. LAI:  No, your Honor.

14             MR. ZWEIBACK:  None, your Honor.

15             THE COURT:  On the basis of Mr. Johnston's responses

16   to my questions, my observations of his demeanor here in court

17   and the representations of counsel, I find that he is fully

18   competent to enter an informed plea of guilty at this time.

19             Mr. Johnston, have you received a copy of the

20   Information containing the charges against you?

21             THE DEFENDANT:  Yes, I have.

22             THE COURT:  Have you read it?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  And have you had enough time to discuss

25   the charges with your lawyer and any possible defenses to those

Ebldjohp
                          Plea

1   charges?

2            THE DEFENDANT:  Yes, I have.

3            THE COURT:  And has your lawyer explained to you the

4   consequences of entering a guilty plea?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Are you satisfied with your lawyer's

7   representation of you?

8            THE DEFENDANT:  I am.

9            THE COURT:  All right.  Now, hang on one moment.

10           (Pause)

11           All right.  Ordinarily I have the defendant execute a

12  Waiver of Rights Form.  Mr. Szeiback, did your client do that

13  or no?  It looks like no.

14           MR. ZWEIBACK:  No, he has not, your Honor.

15           THE COURT:  All right.  Let's proceed nonetheless

16  since it is really belts-and-suspenders and not necessary for

17  Rule 11 purposes.

18           Mr. Johnston, I am going to explain to you certain

19  rights that you have.  These are rights that you would be

20  giving up by entering a guilty plea.  I want you to listen

21  carefully, and if there is anything that you do not understand,

22  stop me and either Mr. Szeiback or I will explain the matter

23  more fully.

24           Under the Constitution and laws of the United States,

25  you have the right to plead not guilty to the charges in the

Ebldjohp
                              Plea

1    Information.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  If you did plead not guilty, you would be

4    entitled to a speedy and a public trial by a jury on the

5    charges in the Information.  Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  At a trial you would be presumed to be

8    innocent and you would not have to prove that you were

9    innocent.  Instead, the government would be required to prove

10   your guilt by competent evidence beyond a reasonable doubt

11   before the jury could find you guilty.  Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  In order to find you guilty, a jury of

14   twelve people would have to agree unanimously that you were

15   guilty.  Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  At that trial and at every stage of your

18   case, you would be entitled to be represented by a lawyer, and

19   if you could not an afford a lawyer, one would be appointed at

20   public expense, free of cost to represent you.  Do you

21   understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  During a trial the witnesses for the

24   government would have to come to court and testify in your

25   presence.  Your lawyer could cross-examine those witnesses and

Ebldjohp
                              Plea

1  object to any evidence offered against you by the government

2  and offer evidence on your own behalf, if you so desired.  You

3  would also have the right to have subpoenas issued or other

4  process used to compel witnesses to come to court and testify

5  in your defense.

6            Do you understand all of that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  At a trial, although you would have the

9  right to testify if you chose to do so, you would also have the

10 right not to testify, and if you chose not to testify, then no

11 one, including a jury, could draw any inference or suggestion

12 of guilt from the fact that you did not testify.  Do you

13 understand that?

14           THE DEFENDANT:  Yes, I do.

15           THE COURT:  Before trial, you would have an

16 opportunity to seek suppression, or exclusion, of any evidence

17 that the government would offer against you at trial.  Do you

18 understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  If you were convicted at a trial, you

21 would have the right to appeal that verdict.  Do you understand

22 that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  If you plead guilty you will also have to

25 give up your right not to incriminate yourself because I may

Ebldjohp
Plea

1  ask you questions about what you did in order to satisfy myself

2  that you are guilty as charged, and you will have to admit and

3  acknowledge your guilt.  Do you understand that?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  If you plead guilty and if I accept your

6  plea, you will give up your right to a trial and the other

7  rights that we have just discussed, other than your right to a

8  lawyer which you keep whether or not you plead guilty, but

9  there will be no trial, and I will enter a judgment of guilty

10  and sentence you on the basis of your plea after I have

11  considered a presentence report prepared by the United States

12  Probation Department and any submissions that I get from the

13  lawyers.  There will be no appeal with respect to whether you

14  did or did not commit the offense to which you are pleading

15  guilty or with respect to whether the government could or could

16  not use the evidence that it has against you.

17          Do you understand all of that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Even now as you are entering this plea,

20  you have the right to change your mind, to plead not guilty,

21  and to go to trial on the charges in the Information.  Do you

22  understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand each and every one of

25  the rights that I have just explained to you?

Ebldjohp
                              Plea

1              THE DEFENDANT:  I do.

2              THE COURT:  And are you willing to give up your right

3    to a trial and the other rights that we have just discussed?

4              THE DEFENDANT:  I am.

5              THE COURT:  Do you understand that you are charged in

6    Count One of the Information with participating in a conspiracy

7    to commit computer hacking, in violation of Title 18, United

8    States Code, Section 1030(b)?  Do you understand that that is

9    the charge?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Ms. Lai, would you please state the

12   elements of that offense.

13             MS. LAI:  Yes, your Honor.

14             If the case were to proceed to trial, the government

15   would have to prove the following elements beyond a reasonable

16   doubt:  First, that there was an agreement between at least two

17   people to violate the laws of the United States, in this case

18   the law against computer hacking; and, two, that the defendant

19   joined that agreement knowingly and willfully, meaning that he

20   understood the goal of the agreement and he joined it with the

21   intent to further that goal.

22             In this case, the law against computer hacking, and

23   specifically Section 1030(a)(5)(A), includes the following

24   elements:  First, that the defendant or a co-conspirator

25   knowingly caused the transmission of a program, information,

Ebldjohp
Plea

1    code, or command; second, that that transmission would

2    intentionally cause damage to a protected computer without

3    authorization -- a protected computer is defined as one that is

4    used in or affects interstate commerce or communications, so

5    essentially any computer connected to the Internet -- and,

6    third, to prove a felony as charged in this case, the

7    government would have to prove that there was an aggregate loss

8    of $5,000 during a one-year period or damages affecting ten or

9    more protected computers during a one-year period.

10           THE COURT:  Thank you.  I'm not sure it matters, but

11   is there an overt act requirement for purposes of the

12   conspiracy charged here?

13           MS. LAI:  That is a good question.  We would be able

14   to prove one if there is, your Honor.

15           THE COURT:  All right.  Mr. Johnston, do you

16   understand that if you were to go to trial, the government

17   would have to prove each of the elements that Ms. Lai mentioned

18   and perhaps, as well, that there was an overt act committed in

19   furtherance of the conspiracy beyond a reasonable doubt before

20   the jury could find you guilty?  Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  All right.  Let me tell you now about the

23   maximum possible penalties for the crime to which you are

24   pleading guilty.  By "maximum" I mean the most that could

25   possibly be imposed upon you.  That doesn't necessarily mean

Ebldjohp
Plea

1    that that is the sentence you will receive.  But you have to

2    understand that by pleading guilty you are exposing yourself to

3    a combination of punishments up to the maximum that I'm about

4    to tell you.  Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  First let me tell you about the possible

7    restrictions on your liberty.  The maximum term of imprisonment

8    for this crime is 10 years, which could be followed by up to

9    three years of supervised release.  "Supervised release" means

10   that you would be subject to supervision by the Probation

11   Department.  There would be rules of supervised release that

12   you would be required to follow, and if you violated any of

13   those rules you could be returned to prison to serve additional

14   time without a jury trial and without credit for the time that

15   you spent on your underlying sentence or credit for time spent

16   on post-release supervision.

17             Do you understand that?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  You should understand that there is no

20   parole in the federal system and that if you were sentenced to

21   prison you would not be released early on parole.  There is a

22   limited opportunity to earn credit for good behavior, but if

23   you were sentenced to prison, you would have to serve at least

24   85 percent of the time to which you were subpoenaed.

25             Do you understand that?

Ebldjohp
                                  Plea

1              THE DEFENDANT:  Yes.

2              THE COURT:  In addition to those potential

3    restrictions on your liberty, there are certain financial

4    penalties involved in the maximum possible punishment.  The

5    maximum allowable fine is the greatest of $250,000, twice the

6    gross pecuniary, or financial gain, derived from the offense or

7    twice the gross pecuniary loss to someone other than you as a

8    result of the offense; second, I can order restitution to any

9    person or entity injured as a result of your criminal conduct.

10             Ms. Lai, is there any restitution at issue here, and,

11   if so, does the government have a calculation of it at the

12   moment?

13             MS. LAI:  We don't have a calculation at this point.

14   We will submit it before sentencing.

15             THE COURT:  All right.  Third, I can order you to

16   forfeit all property derived from the offense or used to

17   facilitate the offense, and finally, I must order a mandatory

18   special assessment of $100.

19             Do you understand, those are the maximum possible

20   penalties?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are you a citizen of the United States,

23   Mr. Johnston?

24             THE DEFENDANT:  Yes, I am.

25             THE COURT:  Do you understand that as a result of your

Ebldjohp
Plea

1    guilty plea, there may be adverse effects on your

2    immigration -- forgive me.  You said "yes" and I was not

3    listening carefully enough.  Ignore that.

4            Do you understand that as a result of your guilty

5    plea, you may lose certain valuable civil rights, to the extent

6    that you have them or could otherwise obtain them now, such as

7    the right to vote, the right to hold public office, the right

8    to serve on a jury, and the right to possess any kind of

9    firearm?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Are you serving any other sentence, either

12   state or federal, or being prosecuted in any other court at

13   this time?

14           THE DEFENDANT:  No.

15           THE COURT:  Do you understand that if your lawyer or

16   anyone else has attempted to predict for you what your sentence

17   will be, that their predictions could be wrong?

18           THE DEFENDANT:  Yes.

19           THE COURT:  It is important for you to understand that

20   no one -- not your lawyer, not the government's lawyer -- no

21   one can give you any assurance or promise as to what your

22   sentence will be in this case, and that is because your

23   sentence will be determined by me and by me alone.  And I'm not

24   going to do that today.  Instead, I will wait until I get the

25   presentence report, prepared by the United States Probation

Ebldjohp

Plea

1   Department that I mentioned earlier.  I will do my own

2   independent calculation of the United States Sentencing

3   Guidelines and how they apply to your case.  I will consider

4   any potential departures from the guidelines' range as well as

5   any submissions I receive from the lawyers and factors set

6   forth in a statute that governs sentencing, Title 18, United

7   States Code, Section 3553(a).

8          I'll do all of that before determining and imposing an

9   appropriate sentence on you.  Do you understand all of that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And have you discussed that process with

12   your lawyer?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  Even if your sentence is different from

15   what your lawyer or anyone else has told you that it might be,

16   even if it is different from what you expect or hope it to be

17   you, and even if it is different from what may be in the plea

18   agreement with the government that we will talk about in a

19   moment, you will still be bound by your guilty plea and you

20   will not be allowed to withdraw your plea of guilty.  Do you

21   understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Now, I understand that there is a written

24   plea agreement that you and your lawyer have entered into with

25   the lawyer for the government.  Is that correct?

Ebldjohp
                              Plea

1            THE DEFENDANT:  That is correct.

2            THE COURT:  I have the letter plea agreement here,

3    dated September 19, 2014, from Assistant United States

4    Attorneys Daniel Noble and Sara Lai, addressed to Mr. Szeiback.

5    I will mark this as Court Exhibit 1 and provide it to the

6    government to retain in its possession after this proceeding.

7            Turning to the last page, which I am showing you now,

8    it appears that you have signed the plea agreement and dated it

9    today, November 21, 2014.  Is that your signature there on the

10   last page?

11           THE DEFENDANT:  Yes, it is.

12           THE COURT:  Did you read the plea agreement before you

13   signed it?

14           THE DEFENDANT:  Yes, I did.

15           THE COURT:  And did you sign it in the presence of

16   Mr. Szeiback?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And did you discuss it with Mr. Szeiback

19   before you signed it?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Did he explain it to you and answer

22   whatever questions you may have had about the plea agreement

23   before you signed it?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Did you fully understand it before you

Ebldjohp
                                    Plea

1    signed it?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Now, one of the features of this agreement

4    is that you agree and do admit to the forfeiture allegation

5    with respect to Count One of the Information, and agree to

6    forfeit to the United States certain property referenced in the

7    plea agreement, is that correct?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Now, another feature of your agreement is

12   that you and the government have agreed on how the United

13   States Sentencing Guidelines apply to this case, is that

14   correct?

15             THE DEFENDANT:  Yes.

16             THE COURT:  You should understand that that agreement

17   is binding on you and it is binding on the government but it is

18   not binding on me.  I have my own independent obligation to

19   determine the correct guidelines' range.  I'm not suggesting to

20   you that I will come up with a different calculation than the

21   one to which you and the government have agreed, but it's

22   possible that I could.  And even if I do and even if the range

23   that I calculate is higher than the range set forth in your

24   agreement, you would still be bound by your guilty plea and you

25   would not be allowed to withdraw your plea.

Ebldjohp
                          Plea

1           Do you understand that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Another feature of your agreement is that

4    you have agreed to give up, or waive, your right to appeal or

5    otherwise challenge any sentence that is within or below the

6    stipulated Sentencing Guidelines' range of 46 to 57 months'

7    imprisonment.  That means that if I sentence you to 57 months

8    in prison or anything less than 57 months in prison, you would

9    not have any right to appeal or otherwise challenge that

10   sentence.  Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Does this written plea agreement

13   constitute your complete and total understanding of the entire

14   agreement between you and the government?

15          THE DEFENDANT:  Yes, it does.

16          THE COURT:  Has anything been left out of the written

17   plea agreement?

18          THE DEFENDANT:  No, it has not.

19          THE COURT:  Other than what is written in the

20   agreement, has anyone made any promise to you or offered you

21   any inducements either to plead guilty or to sign the

22   agreement?

23          THE DEFENDANT:  No.

24          THE COURT:  And has anyone threatened you or forced

25   you to plead guilty or to sign the agreement?

Ebldjohp
                              Plea

1              THE DEFENDANT:  No.

2              THE COURT:  Has anyone made a promise to you as to

3    what your sentence will be in this case?

4              THE DEFENDANT:  No.

5              THE COURT:  OK.  Mr. Johnston, I would like you now to

6    tell me in your own words what you did that makes you believe

7    that you are guilty of the charge in Count One of the

8    Information.

9              THE DEFENDANT:  In about August 2011, a person who

10   used the online name of Marjinz offered me a job at his company

11   called Blackshades.  Blackshades was an Internet business that

12   sold various computer tools, including a product called a

13   remote access tool.  I knew that remote access tools were used

14   by network administrators to control computers on their

15   network.  They were also used by parents to control and monitor

16   computers used by their children.

17             My work for Blackshades involved sales and customer

18   support.  My sales activity mainly consisted of posting

19   information on Blackshades on different websites.  Customer

20   support consisted of responding to customer inquiries on the

21   Blackshades' website and setting up Blackshades account for new

22   customers.

23             Initially, Marjinz paid me $500 a month.  Later

24   Marjinz allowed me to keep some of the proceeds of the products

25   that I sold directly through Internet forums while Marjinz kept

Ebldjohp
                          Plea

1    the proceeds of sales processed through the Blackshades'

2    website.  I never had access to the customer account

3    information stored on the Blackshades servers.

4           On about October 20, 2011, I activated a Blackshades'

5    account for a new customer and transmitted that information to

6    the new customer by electronic message.

7           After I started working for Blackshades I learned

8    through online posts that some of Blackshades' customers were

9    using their remote access tool and other Blackshades' products

10   for illicit purposes.  For instance, some people would install

11   a Blackshades' remote access tool onto computers without

12   knowledge or consent of the computer owner.  Once installed,

13   the Blackshades user could use the tool to remotely control the

14   other person's computer.

15          I also learned that Marjinz had caused the

16   Blackshades' remote access tool to be programmed so Marjinz can

17   control all of the computers onto which Blackshades' customers

18   had installed it.  Marjinz also had access to recover passwords

19   and other information in all customer accounts on the

20   Blackshades' server.

21          After learning how Marjinz was using the Blackshades'

22   products, I continued working for Blackshades and posting and

23   selling the product Blackshades for about 45 days.  I worked

24   for Blackshades until about September 2012.

25          I understand and agree that during my involvement with

Ebldjohp
Plea

1   Blackshades, Blackshades' customers used the remote access tool

2   to infect more than 10 computers.  I also understand that the

3   website in which I posted information about Blackshades was

4   accessible in the Southern District of New York.

5           THE COURT:  All right.  Let me ask you just a couple

6   of questions.

7           First of all, I take it you understood that the 10 or

8   more computers that you reference, that the installation, if

9   you will, of Blackshades on those computers was not authorized,

10  in other words, it was done without the permission or knowledge

11  of the people who owned or controlled those computers, is that

12  correct?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  And when you did these things,

15  or at least at some point along the way and you continued to do

16  these things, you understood what was going on?  You understood

17  that this involved the installation of malwear, if you will, on

18  others' computers without authorization, is that correct?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And you participated in the sense that you

21  did things in furtherance of that notwithstanding that

22  knowledge, is that correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And agreed to do those things voluntarily?

25          THE DEFENDANT:  Yes.

Ebldjohp
Plea

1      THE COURT:  All right.  And when you did those

2  things -- again, I recognize it sounds like at the beginning of

3  this process you didn't necessarily understand the full scope

4  of everything, but at some point when you did gain that

5  knowledge and did the things that you described, did you know

6  that what you were doing was wrong and against the law?

7      THE DEFENDANT:  Yes.

8      THE COURT:  All right.  Mr. Szeiback, do you know of

9  any valid defense that would prevail at trial or of any reason

10  why Mr. Johnston should not be permitted to plead guilty?

11      MR. ZWEIBACK:  No, your Honor.

12      THE COURT:  Ms. Lai, are there any additional

13  questions that you would like me to ask of Mr. Johnston?

14      MS. LAI:  No, your Honor.  Thank you.

15      THE COURT:  And would you please summarize what the

16  government's evidence would be if the defendant were to go to

17  trial.

18      MS. LAI:  Yes, your Honor.

19      If the case were to go to trial, the evidence that the

20  government would present would include the following:  Evidence

21  from emails --

22      THE COURT:  Could you just speak into the microphone

23  as well, please?

24      MS. LAI:  The government's evidence -- is that better?

25      THE COURT:  I'm not sure your microphone is working,

Ebldjohp
                              Plea

1    but go ahead and just speak up.

2               MS. LAI:  The government's evidence would include

3    evidence seized from email accounts pursuant to search warrants

4    as well as instant messages.  Those emails and instant

5    messages, includes ones with the defendant, in which he and

6    customers discussed -- he, customers, and Marjinz discussed the

7    Blackshades' products and the remote access tool.

8               The government's evidence would also include data

9    seized from a computer which hosted the Blackshades' website

10   that contained a copy of the Blackshades' -- copies of the

11   Blackshades products.  It would also include a copy of the

12   remote access tool, which was actually downloaded by an

13   undercover agent in the Southern District of New York, in

14   Manhattan.

15              There would also be electronic payment records showing

16   that Marjinz paid this defendant for his work with the

17   Blackshades organization, and, also, there would be postings

18   downloaded from online forums in which this defendant

19   advertised the Blackshades' product, and the remote access tool

20   in particular, and described what it is capable of doing.

21              So those are some of the things, as well as cooperator

22   testimony, your Honor.

23              THE COURT:  All right.  Do both counsel agree that

24   there is a sufficient factual basis for a guilty plea to Count

25   One?

Ebldjohp

Plea

1      MR. ZWEIBACK:  I do, your Honor.

2      THE COURT:  Ms. Lai?

3      MS. LAI:  Yes.

4      THE COURT:  And does either counsel know of any reason

5 that I should not accept the defendant's plea of guilty?

6      MS. LAI:  No, your Honor.

7      MR. ZWEIBACK:  No, your Honor.

8      THE COURT:  OK.  Mr. Johnston, because you acknowledge

9 that you are in fact guilty as charged in Count One of the

10 Information, because I am satisfied that you know of your

11 rights, including your right to go to trial, that you

12 understand the potential consequences of a guilty plea,

13 including the sentence that could be imposed upon you, and

14 because I find that you are knowingly and voluntarily pleading

15 guilty, I accept your guilty plea, and enter a judgment of

16 guilty on Count One of the Information.

17      The Probation Department will want to interview you in

18 connection with the presentence report that it will prepare.

19 If you choose to speak with the Probation Department, it is

20 essential that anything you say is truthful and accurate.

21 Among other things, that report is important to me in deciding

22 what sentence to impose upon you.

23      Before sentencing, you and Mr. Szeiback will have an

24 opportunity to review the report.  I would urge you to review

25 it with care, and if there are any mistakes in the report or

Ebldjohp
                          Plea

1    anything that you wish to bring to my attention in connection

2    with sentencing, share that with Mr. Szeiback so that you can

3    do so in the proper manner.  Understood?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Now, Mr. Szeiback, do you wish to be

6    present for any interview in connection with that report?

7              MR. ZWEIBACK:  I do, your Honor.

8              THE COURT:  I will order that no interview take place

9    unless counsel is present.

10             Sentencing will be set for March 3, 2015, at 3:30 in

11   the afternoon, and I have a feeling that you have a request.

12   Yes, sir.

13             MR. ZWEIBACK:  I do, your Honor.

14             Mr. Johnston is in school.  He successfully completed

15   this semester of college.  He is registering for next semester.

16   That semester will be done at the beginning of May.  I would

17   like to request that the sentencing be put off until the end of

18   May so that he cannot only complete his full semester but we

19   are also in the process of obtaining some medical records that

20   will be relevant to the sentencing.

21             THE COURT:  All right.  Any objection, Ms. Lai?

22             MS. LAI:  No, your Honor.

23             THE COURT:  All right.  I will put it on, then, for

24   Wednesday, May 27th, at 3:30 in the afternoon.

25             In light of the amount of time between now and then, I

Ebldjohp

Plea

1   very much do not want to adjourn the sentencing.  So you should

2   not anticipate adjournments and should plan accordingly.

3           I direct the government to provide to the Probation

4   Department its factual statement of the offense within seven

5   days.

6           Defense counsel must arrange for the defendant to be

7   interviewed by the Probation Department in I'll say the next

8   three weeks in light of the holiday that is coming up.

9           Pursuant to my individual rules and practices, defense

10  submissions with regard to sentencing are due two weeks prior

11  to sentencing.  The government's submission is due one week

12  prior to sentencing.  If either side does not intend to make a

13  substantive sentencing submission, it should file a letter on

14  ECF to that effect.  And you should consult my rules if there

15  is any request to file anything under seal or in redacted form,

16  including but not limited to any medical records, for example.

17          Ms. Lai, any objection to the defendant's current bail

18  conditions being continued through the date of sentencing?

19          MS. LAI:  No, your Honor.

20          THE COURT:  All right.  Mr. Johnston, you should

21  understand that the conditions upon which you have been

22  released up 'til now will continue to apply until the date of

23  sentencing.  Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You should also understand that any

Ebldjohp
                              Plea

1     violation of those conditions could have very serious

2     consequences for you at the time of sentencing.  Do you

3     understand that?

4                 THE DEFENDANT:  Yes.

5                 THE COURT:  Finally, you should understand that you

6     must be in this courtroom on the date and time that I set for

7     sentencing, and if you are not, you will be guilty of a

8     separate crime and could be subject to punishment, including

9     prison or a fine, in addition to whatever punishment is imposed

10    in connection with your plea today.  Do you understand that?

11                THE DEFENDANT:  Yes.

12                THE COURT:  All right.  Anything further, Ms. Lai?

13                MS. LAI:  No, your Honor.  Thank you.

14                THE COURT:  Mr. Szeiback?

15                MR. ZWEIBACK:  No, your Honor.

16                THE COURT:  All right.  In that case, I will stay on

17    the bench but this matter is adjourned.  Thank you.

18

19                              -   -   -

20

21

22

23

24

25